**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **INVITROGEN CORP., et al.** § | |
| § | |
| v. § | **CIVIL ACTION NO. 6:08-CV-163** |
| § | |
| **EVIDENT TECHNOLOGIES, INC.,** § | |
| **et al.** § | |

## REPORT AND RECOMMENDATION OF
## UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Evident Technologies, Inc.'s ("Evident") Motion to Transfer or in the Alternative to Dismiss for Improper Venue. (Doc. No. 15.) For the reasons stated below, the Court **RECOMMENDS** that Defendant's Motion be **DENIED**.

### BACKGROUND

Plaintiffs Invitrogen Corp., Quantum Dot Corp., Molecular Probes, Inc., and the Regents of the University of California (hereinafter, collectively "Invitrogen") initiated this case by filing a complaint on April 29, 2008, alleging that Evident and five unidentified "John Doe" defendants had infringed three U.S. Patents. (Doc. No. 1.) Invitrogen filed an Amended Complaint on June 19, 2008. (Doc. No. 12.) Evident is responding with the present Motion to Transfer or Dismiss for Improper Venue. (Doc. No. 15.) The Court held a non-evidentiary hearing on the Motion on October 6, 2008.

Defendant Evident is a small Delaware corporation with no parent or subsidiary companies, whose sole place of business is in Troy, New York. It manufactures and sells a special class of "semiconductors" known as "quantum dots," or "nanocrystals." (Doc. No. 15-2; Ballinger Aff. ¶ 2.) These devices emit a very specific color of light when properly stimulated and are used in many applications, including light-emitting diodes, security tags, and solar energy cells. They may also be used as biological tags to detect the presence of particular substances. In this application the quantum

dot is attached to an antibody and added to a mixture. If the substance is present, then the quantum dot will emit light of a very specific color. (Ballinger Aff. ¶ 3.)

The claims of the patents-in-suit require a quantum dot that (i) is water soluble, and (ii) has a "linking agent" attached to it that is capable of linking the quantum dot to an "affinity molecule," such as an antibody. (Doc. No. 1-2, 1-3, 1-4.) Invitrogen specifically identified the accused products in this case as Evident's EVIFLUOR® and EVITAG® products. (Doc. No. 1 ¶ 14.)

Evident operates a web site (http://www.evidenttech.com/), which can be accessed in the Eastern District of Texas. The website contains a virtual store which allows customers to place orders online. The website also allows users to submit product questions, sign up for periodic company mailings and emails, and register by creating a user name and password which grants access to otherwise restricted materials such as technical documents. (Ballinger Aff. ¶ 32-37.)

## PARTIES' ARGUMENTS

Evident has filed a Motion to Transfer or in the Alternative to Dismiss for Improper Venue. Evident claims that it has not made minimum contacts with the Eastern District of Texas because neither it nor any of its distributors have sold any accused infringing products in this District. Evident also claims that it has not established any distribution channels in this District or marketed its products here. Invitrogen counters that Evident has made minimum contacts through its website, because it offers to sell accused infringing products and is accessible to residents of the Eastern District of Texas.

## DISCUSSION

I.      **Motion to Dismiss for Improper Venue**

To establish venue in patent cases, the plaintiff must bring suit in "the judicial district where

the defendant resides." 28 U.S.C. § 1400(b). A corporate defendant will only be deemed to "reside" in a judicial district if "its contacts [with that district] would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . ." 28 U.S.C. § 1391(c); *see also VE Holding Corp. v. Johnson Gas Appliance Co.*, 917 F.2d 1574, 1584 (Fed. Cir. 1990). In patent cases, district courts decide issues of personal jurisdiction under Federal Circuit law rather than the law of the regional circuit in which the case arises. *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995). If the parties have not conducted jurisdictional discovery, the plaintiff has the burden of making out a prima facie case supporting jurisdiction. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed Cir. 2003). A non-evidentiary hearing does not affect the plaintiff's burden. *See, e.g., Lyle Richards Int'l, Ltd. v. Ashworth, Inc.*, 132 F.3d 111, 112 (1st Cir. 1997). Unless directly contravened, the plaintiff's version of the facts is taken as true, and the pleadings and affidavits are to be construed in the light most favorable to the plaintiff. *See Campbell Pet Co. v. Miale*, 542 F.3d 879, 887 (Fed. Cir. 2008 Sept. 18, 2008).

There are two types of personal jurisdiction, general and specific. General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic." *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). In this case, the parties agree that the Court lacks general personal jurisdiction. Specific jurisdiction exists when: (1) the forum state's long-arm statute permits service of process on the defendant, and (2) the assertion of personal jurisdiction meets the constitutional requirements of Due Process. *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359-60 (Fed. Cir. 2001). Like most states, though, Texas' long arm statute confers personal jurisdiction to the fullest extent permitted by the Constitution. *See AdvanceMe, Inc. v. Rapidpay LLC*, 450 F.Supp.2d 669, 673 (E. D. Tex. 2006). As a result, the personal jurisdiction

analysis collapses down to whether an exercise of jurisdiction over Evident would comport with the Due Process Clause of the Constitution. *Id.*

The Federal Circuit applies the three-part *Akro* test to evaluate a constitutional Due Process inquiry with respect to an out-of-state defendant. *Akro Corp.*, 45 F.3d at 1545-46. A court must consider: (1) whether the defendant has purposefully directed its activities at residents of the forum, (2) whether the claim arises out of or relates to the defendant's activities with the forum, and (3) whether assertion of personal jurisdiction is reasonable and fair. *Id.* The first two factors of this test correspond with the "minimum contacts" prong from *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). The burden rests on the plaintiff to establish the first two factors. *Inamed v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001). If the plaintiff is successful, then the burden shifts to the defendant to establish the third factor. *Id.*

This test allows a court to exercise specific personal jurisdiction over a foreign defendant who commits a tort in the forum state. *Hupp v. Siroflex of Am., Inc.*, 848 F. Supp. 744, 746 (S.D.Tex.1994). Patent infringement is a tort, which includes selling and offering to sell patented inventions. *Id.*; 35 U.S.C. § 271(a). Its injury occurs in the state where the infringing article is sold, or the offer to sell is made. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1571 (Fed.Cir.1994).

*Minimum Contacts*

Invitrogen argues that Evident interacted with forum residents by offering to sell infringing products through its website.[1] *See* 35 U.S.C. § 271(a). The Federal Circuit has not yet defined the

---

[1] Invitrogen also argues that personal jurisdiction is proper in this case based on the stream of commerce theory. Because the Court finds personal jurisdiction based on Evident's website, it need not address the stream of commerce theory.

4

standard for minimum contacts via a website. *See Trintec Indus., Inc. v. Pedre Promotional Prod., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005). Other circuits, including the Fifth Circuit, have adopted the sliding-scale test put forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D.Pa.1997). *See Revell v. Lidov,* 317 F.3d 467, 470 (5th Cir.2002). On one end of the scale are "passive" websites which only allow the owner to post information on the site. These sites do not give rise to personal jurisdiction. *Id.* On the other end of the scale are "highly interactive" sites by which the owner engages in repeated online contact with forum residents. These sites, which often include "virtual stores," give rise to personal jurisdiction because the owner does business directly with forum residents. *Id.*; *Zippo Mfg. Co.,* 952 F. Supp. at 1124; *see Stomp v. NeatO, LLC*, 61 F. Supp. 2d 1074, 1078 (C.D. Cal. 1999). In between, are sites with some interactive elements, which may allow forum residents to exchange information or conduct business with the owner. *Revell,* 317 F.3d at 470; *Zippo Mfg. Co.,* 952 F. Supp. at 1124. In cases involving these "mid-level" websites, courts must analyze the interactivity of the website and the nature of the forum contacts. *Revell,* 317 F.3d at 470; *Zippo Mfg. Co.,* 952 F. Supp. at 1124; *Powerhouse Prod., Inc. v. Widgery*, 564 F. Supp. 2d 672, 679 (E.D. Tex. 2008).

      The parties dispute whether Evident's website is highly interactive or a mid-level website. In *Powerhouse Productions, Inc. v. Widgery*, the plaintiffs accused Defendant Go Fast Sports and Beverage Co. of infringing its trademarks via a website. The website at issue operated as a virtual store, which allowed individuals to purchase products containing the infringing marks. Defendant contended that although its website had many interactive features, it had not made minimum contacts with Texas because it did not sell any products there. *Id.* The Court acknowledged that because Defendant had made no sales in Texas, the website could not be considered highly interactive. It

concluded that Defendant's website was mid-level and analyzed the nature of Defendant's contacts with Texas residents. *Id.* The Court later concluded that, the Defendant had made minimum contacts with the forum when it "intentionally directed the infringing marks" at forum residents through its website. *Id.*

In this case, the parties agree that Evident's website contains several interactive features including a virtual store, which allows users to order products and submit contact information to receive product information. The website also allows users to submit product questions, sign up for periodic company mailings and emails, and register by creating a user name and password which grants access to otherwise restricted materials such as technical documents. Thus, Evident's website is not "passive." *See Zippo Mfg. Co.,* 952 F. Supp. at 1124. The parties also agree that no resident of the Eastern District of Texas has purchased an accused infringing product through the website. Thus, Evident's website is not "highly interactive." *See Powerhouse Prod., Inc.*, 564 F. Supp. 2d at 679. Under the *Zippo* test, Evident operates a mid-level website, and this Court must consider the nature of the forum contacts as well as the interactivity of the website. *See Revell,* 317 F.3d at 470; *Powerhouse Prod., Inc.*, 564 F. Supp. 2d at 679.

The principal contact with forum residents that Invitrogen relies upon is the fact that Evident's website allegedly contained offers to sell accused products in violation of 35 U.S.C. § 271(a). Invitrogen argues that, just as the defendant in *Powerhouse* intentionally directed infringing marks at forum residents through its website, Evident has intentionally directed infringing offers to sell at forum residents through its website. *Powerhouse Prod., Inc.*, 564 F. Supp. 2d at 679. It cites *3D Systems, Inc. v. Aarotech Labs.*, in which the Federal Circuit found that a mass mailing of promotional materials constituted an offer to sell for purposes of § 271(a). 160 F.3d 1373, 1379 (Fed.

Cir. 1998). The Court reached this conclusion despite the fact that the mailings were not definite enough to qualify as offers under traditional contract law principles. *Id.* At least one Court, relying on *3D Systems*, has extended personal jurisdiction in a patent case over a company whose website contained product information and allowed users to submit product request forms to obtain additional information on how to order products, even though the plaintiff could not prove that the defendant sold products to residents of the forum. *Biometics, LLC v. New Womyn, Inc.*, 112 F. Supp. 2d 869, 873 (E.D. Mo. 2000). However, the viability of *3D Systems* and *Biometics* have been called into serious doubt by subsequent case law. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000). In *Rotec Industries, Inc. v. Mitsubishi Corp.*, the Federal Circuit revisited its § 271(a) jurisprudence and concluded that traditional contract law principles do control the meaning of "offers to sell." *Id.* at 1254-55. Thus, *Rotec* effectively overruled *3D Systems*' broader interpretation of § 271(a). *See Moldflow Corp. v. Simcon, Inc.*, 296 F. Supp. 2d 34, 42 (D. Mass. 2003).

Courts applying *Rotec* must look to traditional sources of contract law when interpreting § 271(a). *See id.*; *QR Spex, Inc. v. Motorola, Inc.*, 507 F. Supp. 2d 650, 660 (E.D. Tex. 2007). Under the RESTATEMENT (SECOND) OF CONTRACTS § 24 (1981), an offer is a "manifestation of willingness to enter into a bargain." Furthermore, an offer must be sufficiently definite to create the power of acceptance, otherwise it will be considered a mere solicitation for offers. *See* ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 1.11 (1982).

In *QR Spex, Inc. v. Motorola, Inc.*, the Court considered whether a website which allowed customers to pre-order an upcoming product constituted an offer to sell under § 271(a). 507 F. Supp. 2d at 660. The Court looked to Texas contract law and concluded a customer who pre-orders

products from a website makes an offer to buy products, and the website owner may accept that offer by delivering the products. *Id.* (citing *BarclaysAmerican/Business Credit, Inc. v. E & E Enters.*, 697 S.W.2d 694, 697 (Tex. App.-Dallas 1985, no writ)). A pre-order form on a website, by itself, lacks key elements of an offer such as delivery terms and the quantity of goods. *Id.* Thus, the Court concluded, a pre-order form on a website is merely a solicitation for offers; it cannot be an offer to sell for purposes of § 271(a). *Id.*

Determining whether a website contains offers to sell infringing products is a fact intensive inquiry which must be done on a case by case basis. *See, e.g., AdvanceMe, Inc.*, 450 F. Supp.2d at 673 (finding personal jurisdiction where Defendant offered allegedly infringing services through its website). Here, the Court must evaluate Evident's website in light of the general contract law principles articulated above. *QR Spex* is distinguishable from this case because it dealt with pre-orders for products, whereas Evident used its website to sell the allegedly infringing products to customers. Evident's website contained detailed product information and pricing information. In addition, Evident has admitted that prior to the filing of Invitrogen's complaint, the website did not contain any disclaimers, *i.e.* the website did not warn consumers that the sale was contingent on product availability or a background check on the consumer. The parties do not dispute that residents of the Eastern District of Texas have access to the website. Given these facts, the Court cannot conclude that Evident's website lacked sufficient definiteness to create the power of acceptance, or otherwise failed to satisfy the traditional contract law definition of an offer.

Under the current state of the law, the Court cannot say that personal jurisdiction is not established by a website, such as the one here, offering infringing products for sale. Evident argues that an online offer to sell cannot be a basis for personal jurisdiction because this would subject a

defendant to nationwide jurisdiction. At the non-evidentiary hearing it cited *Campbell Pet Co. v. Miale*, 542 F.3d at 884 and *Trintec Indus., Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d at 1281-82, for the proposition that a website is insufficient to give rise to personal jurisdiction because it is not directed toward any particular forum. However, *Campbell* only addressed the issue of whether a plaintiff can establish general personal jurisdiction through a website. 542 F.3d at 884. In this case, the dispute concerns specific personal jurisdiction.

In *Trintec*, the Federal Circuit did address specific personal jurisdiction. 395 F.3d at 1281-82. There, the Court stated that "'the ability of District residents to access the defendants' websites . . . does not by itself show any persistent course of conduct by the defendants in the District.'" *Id.* (quoting *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000)). This dicta notwithstanding, the Federal Circuit expressly declined to set a standard for minimum contacts via a website. *Id.* In addition, that case is distinguishable because the Court did not find any allegedly infringing offers for sale contained in the website. *See id.* (noting only that the defendant's website contains "some interactive features aimed at transacting business"). Accordingly, the Court finds that Invitrogen satisfied its burden of establishing a prima facie case of minimum contacts with the Eastern District of Texas.

*Fairness and Reasonableness*

If a plaintiff establishes minimum contacts between the defendant and the forum, the defendant may still defeat personal jurisdiction by demonstrating that jurisdiction would not be fair and reasonable. *Akro Corp.*, 45 F.3d at 1545-46. For this inquiry, the Court must consider five *Volkswagen* factors: "(1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most

efficient resolution of controversies; and (5) the interest of the states in furthering their social policies. *Viam Corp. v. Iowa Export-Import Trading Co.*, 84 F.3d 424, 429 (Fed Cir. 1996) (citing *World Wide Volkswagen Corp.*, 444 U.S. at 292). This inquiry will only defeat a court's jurisdiction in the "rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum." *Akro*, 45 F.3d at 1549.

The factors pertinent to the reasonableness inquiry demonstrate that subjecting Evident to litigation in this district would not be unfair and unreasonable. With regard to the first factor, litigation in this district may impose some burden on Evident because it is a small business based in New York. (Ballinger Aff. ¶ 2); *see Campbell Pet Co.*, 542 F.3d at 888. Nonetheless, "[i]t is well recognized that modern communication and transportation have made defending a lawsuit in a foreign tribunal less burdensome." *GSK Tech., Inc. v. Schneider Electric, S.A.*, No. 6:06-cv-361, 2007 WL 788343 at *4 (E.D. Tex. Mar. 14, 2007). This factor weighs somewhat in favor of Evident. With regard to the second factor, Texas has a "significant interest in preventing patent infringement within its borders." *Id.* at *4; *see also Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1356 (Fed. Cir. 2002). In this case, Evident has purposefully directed allegedly infringing offers through its website towards residents of the Eastern District of Texas. This factor weighs in favor of Invitrogen. With regard to the third factor, Invitrogen has an interest in litigating this case in its chosen forum, and will be burdened if it is forced to file its complaint in another district. Thus, this factor weighs in favor of Invitrogen.

As with most patent cases the fourth and fifth factors do not affect this analysis. *See Elec. for Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1352 (Fed. Cir. 2003); *Deprenyl Animal Health, Inc.*, 297

F.3d at 1356; *see also Campbell Pet Co.*, 542 F.3d at 888 (ignoring the fourth and fifth factors). The second and third factors weigh heavily in favor of Invitrogen and the first factor weighs only slightly in favor of Evident. Thus, the Court finds that this is not one of those rare situations where an exercise of personal jurisdiction would be unfair and unreasonable.

## II. Claims against John Doe Defendants

Although there is no prohibition on identifying defendants as "John Doe" or "Unknown," the practice is not favored. *Gillespie v. Civiletti,* 629 F.2d 637, 642 (9th Cir. 1980). A plaintiff may designate defendants as "John Doe" if "(1) the complaint contains allegations that would permit identification of the defendants after reasonable discovery and (2) the plaintiff has made reasonable efforts to learn the names of the unknown defendants before filing suit." *O'Neal v. Unkown Superamerica Employees*, No. 06-C-40-C, 2006 WL 5925948 (W.D. Wis. Mar. 14, 2006); *see also Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996); *Estate of Rosenberg v. Crandell,* 56 F.3d 35, 37 (8th Cir. 1995); *Schiff v. Kennedy*, 691 F.2d 196, 197 (4th Cir. 1982). Because discovery has yet to conclude, the Court finds that dismissal of the John Doe Defendants at this stage would be premature.

## III. Motion to Transfer

Alternatively, Evident asks this Court to transfer the case to the Northern District of New York. Its only stated basis for this transfer is that the Court lacks personal jurisdiction. Having rejected that argument, the Court also denies Evident's Motion to Transfer.

## CONCLUSION

The Court **RECOMMENDS** that Defendant's Motion be **DENIED**.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and

file written objections to the findings and recommendations contained in the report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within ten days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

**So ORDERED and SIGNED this 29th day of October, 2008.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE